WALLACE, Circuit Judge,
concurring in part and dissenting in part:
I concur in Sections I and III of the majority opinion. I agree that a cy pres-only settlement was appropriate in ‘this case and do not contend that the district court abused its discretion in calculating class counsel’s fees.
I dissent, however, from Section II of the opinion, in which the majority blesses the district court’s approval of the settlement, despite the preexisting relationships between class counsel and the cy pres recipients. To me, the fact alone that 47% of the'settlement fund is being donated to the alma maters of class counsel raises an issue which, in fairness, the district court should have pursued further in a case such as thjs. The district court made no serious inquiry to alleviate that concern. Accordingly, I would vacate the district court’s approval of the class settlement, and remand with instructions to hold ah eviden-tiary hearing, examine class counsel under oath, and determine whether class counsel’s prior affiliation with the-cy pres recipients played any role in their selection as beneficiaries.
I.
As the majority opinion outlines, plaintiffs in this case alleged that Google violated class members’ privacy rights by disclosing personal information (such as search terms) to unauthorized third parties. Google’s practice allegedly violated the federal Stored Communications Act, along with various state laws. After several rounds at the motion to dismiss stage, the parties agreed to a class-wide, settlement (before- formal class certification by the district court). The parties estimated the size of the class to be 129 million people.
The settlement contained the following key terms:. (1) Google agreed to pay $8.5 million into a settlement fund; (2) Google would provide notice of the settlement on its website; (3) each class representative would receive $5,000, claims administration costs would be $1 million, and attorney’s fees would be $2,125 million (25% of the settlement fund); and (4) the remainder of the settlement fund (about $5 million) would go to six cy pres recipients. The six cy pres l’ecipients were to be Carnegie Mellon University (21% of the remainder), the World Privacy Forum (17%), Chicago-Kent College of Law Center for Information, Society and Policy (16%), the Stanford Center for Internet and Society (16%), the Berkman Center for Internet and Society at Harvard University (15%), and that the AARP Foundation (15%).
II.
We- review a district court’s approval of a class action' settlement for an abuse of *749 discretion. Rodriguez v. W. Publ’g Corp., 563 F.3d 948, 963 (9th Cir. 2009). Here, however, the parties reached the settlement before the class certification stage. “Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required.” In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).
As stated above, three of the cy pres distribution payments in our case are to Chicago-Kent College of Law (16%), Stanford (16%), and Harvard (15%). Attorneys for the class attended all three of these institutions. We, along with other courts and observers, have pointed out the unseemly occurrence of cy pres funds being doled out to interested parties’ alma maters. See, e.g., Nachshin v. AOL, LLC, 663 F.3d 1034, 1039 (9th Cir. 2011); Securities & Exchange Comm’n v. Bear, Stearns & Co., Inc., 626 F.Supp.2d 402, 414-16 (S.D.N.Y. 2009); Adam Liptak, Doling out Other People’s Money, N.Y. Times, Nov. 26, 200.7 (“Lawyers and judges have grown used to controlling these pots of money, and they enjoy distributing them to favored charities, alma maters and the like”).
In response to this all-too-common development, the American Law Institute has set forth, in its Principles of the Law of Aggregate Litigation, that “[a] cy pres remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the selection of the recipient was made on the merits.” American Law Institute (ALI), Principles of the Law of Aggregate Litigation § 3.07 comment b (2010) (emphasis added). Although the majority tells us correctly that no circuit has adopted the specific “prior affiliation” language, circuits have endorsed § 3.07’s guidance regarding scrutinizing cy pres disbursements. See, e.g., In re BankAmerica Corp. Sec. Litig., 775 F.3d 1060, 1064-65 (8th Cir. 2015) (vacating a cy pres settlement because “class counsel and the district court entirely ignored this now-published ALI authority”); In re Baby Prods. Antitrust Litig., 708 F.3d 163, 172 (3d Cir. 2013) (quoting ALI § 3.07, comment a (2010)); In re Lupron Marketing and Sales Practices Litig., 677 F.3d 21, 33 (1st Cir. 2012) (citing to ALI § 3.07 and asserting that “[c]ourts- have generally agreéd with the ALI Principles”).
I conclude that our circuit should adopt the ALI’s guidance as set forth in § 3.07. District courts should be required to scrutinize cy pres settlements when the proffered recipients of the1 funds have a “prior affiliation” with counsel, á party, or even the judge, especially when one of those-players is a loyal alumni of a cy pres recipient. I do not mean to suggest that class counsel’s alma mater can never be a cy pres beneficiary. Rather, I propose that the burden should be on class counsel tp show through ..sworn testimony, in an on-the-record hearing, that the prior affiliation played no role in the negotiations, that other institutions. were sincerely considered, and that the participant’s alma mater is the proper cy pres recipient.
The majority responds to this line of argument by asserting that “here, we. have nothing more than a barebones allegation that class counsel graduated from schools that house the Internet research centers that will receive funds.” The majority then salutes the district court’s conclusion that there is “no indication that counsel’s allegiance to a particular alma mater factored' into the selection process,” and stresses that the cy pres recipients were a negotiated term, not- chosen' solely by alumni. In *750 essence, the majority holds that despite the nascent dangers posed by apportioning cy pres funds to the distributing parties’ alma maters, the burden is entirely on the objectors to show that the settlement might be tainted.
I disagree fundamentally with this analysis. Our precedent requires that district courts “must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.” In re Bluetooth, 654 F.3d at 947. In our case, we have a cy pres-only settlement. That alone raises a yellow flag. Furthermore, we have a class settlement before formal class certification. That raises another yellow flag. Lastly, we have almost half of the settlement fund, several million dollars, being given to class counsel’s alma maters. To me, that raises a red flag. I am especially dubious of the inclusion of the Center for Information, Society and Policy at Chicago-Kent Law School (a law school attended by class counsel), which center appears to have inaugurated only a year before the parties herein agreed to their settlement. Even with these red and yellow flags, under the majority’s holding, the burden is still on the objectors to prove more, despite the objectors’ lack of access to virtually any relevant evidence that would do so.
I would hold that the combination of a cy pres-only award, a pre-certification settlement, and the fact that almost half the cy pres fund is going to class counsel’s alma maters, is sufficient to shift the burden to the proponents of the settlement to show, on a sworn record, that nothing in the acknowledged relationship was a factor in the ultimate choice. Here, the only sworn-to items in the record on this issue are boiler plate, one-line declarations from class counsel stating “I have no affiliation” with the subject institutions. While the majority asserts that the district court conducted a “careful review,” these terse declarations are the only shred of sworn-to evidence in the record. There was essentially nothing for the district court to review — carefully or not. Although there was some discussion between counsel and the district court during the hearings on the settlement, this was nothing more than unsworn lawyer talk during an oral argument.[1]
I still have many questions surrounding how these universities were chosen, such as: What other institutions were considered? Why were the non-alma mater institutions rejected? What relationship have counsel had with these universities? Have counsel donated funds to then- alma maters in the past? Do counsel serve on any alma mater committees or boards? Do counsel’s family members? How often do counsel visit their alma maters? There are many questions still lingering that have not been answered under oath. Here, as we have directed before, “the district court should have pressed the parties to substantiate their bald assertions with corroborating evidence.” Id. at 948.
Although I would vacate the parties’ settlement, I express no opinion on the definitive fairness of the parties’ agreement. It is not the province of appellate judges to “substitute our notions of fairness for those of the district judge.” Officers for *751 Justice v. Civ. Serv. Commission of the City and County of San Francisco, 688 F.2d 615, 626 (9th Cir. 1982) (internal citations omitted). Instead, I would remand the case to the district court for further fact finding in accordance with the concerns I have expressed.

. I disagree with the majority’s assertion that "sworn testimony seems superfluous" because counsel submitted one-line boilerplate declarations and the district court heard some unsworn argument from the lawyers. My experience as a trial judge taught me to be skeptical of unsworn statements from lawyers, especially when it comes to conflict of interest issues. To me, there is a significant difference between sworn and unsworn testimony.