Jose ONTIVEROS, Plaintiff,

v.

Robert ZAMORA; Zamora Automotive Group; Stockton Auto Cars, Inc., dba Stockton Honda & Stockton Mazda; Auto Town, Inc., dba Toyota Town & Stockton Scion; Hammer Lane Volkswagen, Inc.; Quality Motor Cars of Stockton, dba Acura of Stockton, Go Hyundai, & Kia of Stockton; Saturn of Stockton, dba Saturn of Modesto; Lodi Motors Inc., dba Lodi Honda; Merced Auto Cars, Inc., dba Merced Toyota & Merced Scion; Clovis Auto Cars, Inc., dba Clovis Volkswagen; and Country Nissan, dba Nissan Kia Country, Defendants.

Civ. No. 2:08–567 WBS DAD.

United States District Court,
E.D. California.

Signed Oct. 8, 2014.

Hector Rodriguez Martinez, Stanley S. Mallison, Joseph Donald Sutton, Marco A. Palau, Mallison & Martinez, Oakland, CA, for Plaintiff.

John E. Lattin, IV, Fisher & Phillips, LLP, Santa Ana, CA, Linda J. Gulledge, Fisher & Phillips LLP, Irvine, CA, for Defendants.

### MEMORANDUM AND ORDER RE: MOTION FOR FINAL SETTLEMENT APPROVAL

WILLIAM B. SHUBB, District Judge.

Plaintiff Jose Ontiveros brought this wage-and-hour action on behalf of himself and a putative class of approximately three hundred similarly situated service technicians at automotive dealerships affiliated with defendant Zamora Automotive Group ("ZAG"), which operates numerous automotive dealerships located throughout the San Joaquin Valley. Over six years after the litigation commenced, the parties agreed to settle the action on a class-wide basis. The court granted preliminary approval of the $2,000,000 settlement. (July 7, 2014 Order (Docket No. 137, 2014 WL 3057506).) The parties now move jointly for final approval of that settlement pursuant to Federal Rule of Civil Procedure 23(e).

### I. *Factual and Procedural History*

Plaintiff worked at Stockton Honda, a ZAG-affiliated dealership, for seven months

in 2007. (Ontiveros Decl. ¶ 2 (Docket No. 75–6).) Plaintiff alleges that he and other technicians employed at ZAG-affiliated dealerships were paid using a piece-rate scheme that failed to compensate employees for the actual time they worked. (*Id.* ¶ 4; *see also* Feb. 20, 2009 Order re: Mot. for J. on Pleadings at 5 ("Although not pled in detail in plaintiff's complaint, plaintiff and defendants both agree that the corporate defendants used a 'flag rate' or 'piece rate' compensation system for the automobile mechanics they employed.") (Docket No. 29).)

In his Second Amended Complaint ("SAC"), plaintiff alleges that defendants' compensation practices violated both federal and state wage-and-hour statutes and asserts ten claims under California law.[1] While plaintiff does not assert a claim under the FLSA, he does allege that defendants' failure to comply with the FLSA constitutes an unlawful business practice under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.Code §§ 17200 *et seq.*

This action was previously assigned to another district judge. Prior to reassignment, the court denied in part defendants' motion for judgment on the pleadings and held that plaintiff had stated plausible claims that defendants' compensation practices were unlawful. (Docket No. 29.) The court stayed the case in 2010 pending the resolution of a related insurance-coverage case in state court and subsequently lifted that stay on July 26, 2012. (Docket Nos. 51, 58, 64.) In December 2012, plaintiff moved for class certification and defendants moved to compel individual arbitration of plaintiff's claims. (Docket Nos. 72–73.) The court denied defendants' motion to compel arbitration, and defendants timely appealed. (Docket Nos.

104–05.) The court once again stayed the case pending the outcome of that appeal. (Docket No. 118.)

Before the Ninth Circuit resolved defendants' appeal, the parties reached a settlement. (Mallison Decl. ¶¶ 30–36 (Docket No. 143), Ex. 1 ("Settlement Agreement" (Docket No. 145).) The Agreement requires defendants to pay $2,000,000 to plaintiff and a class of similarly situated ZAG service technicians. (*Id.* ¶ 31.) After accounting for attorney's fees, civil penalties, taxes, an incentive award to plaintiff, and other administrative expenses, the remainder of the settlement funds will be divided between the class members in proportion to the number of weeks worked during the class period. (*Id.* ¶¶ 31–32.) Any unclaimed settlement funds will be redistributed to class members on a pro rata basis; if there are funds left over after that point, the funds are to be redistributed to designated *cy pres* beneficiaries. (Settlement Agreement § III, ¶ E.) No portion of the settlement fund will revert to defendants. (*Id.*)

After the parties reached this settlement, plaintiff moved for preliminary approval of the settlement and conditional certification of a class of current and former service technicians pursuant to Federal Rule of Civil Procedure 23. (Docket No. 123.) The previously-assigned district judge recused himself on June 25, 2014, and the action was subsequently reassigned to the undersigned judge for all further proceedings. (Docket No. 125.) In its Order granting preliminary approval of a class and collective action settlement, the court provisionally certified the following class: "all nonexempt automotive technicians who have been employed by one

---

1. Those claims include: (1) unlawful business practices under California Business & Professions Code sections 17200 *et seq.* based on violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.;* (2) failure to pay overtime wages under section 1194(a) of the California Labor Code; (3) failure to pay minimum wage under section 1194(a) of the California Labor Code; (4) failure to provide rest periods under section 1194(a) of the California Labor Code; (5) unlawful kickback payments in violation of sections 221 to 223 of the California Labor Code; (6) failure to pay timely wages due at termination in violation of sections 201 to 203

of the California Labor Code; (7) failure to provide accurate employee wage statements in violation of sections 1174 and 1175 of the California Labor Code; (8) failure to pay reporting time wages in violation of section 1197 of the California Labor Code; (9) unlawful and unfair business practices under California Business and Professions Code based on violations of the California Labor Code. In addition, plaintiff asserts a claim on his own behalf under the California Private Attorney General Act, Cal. Labor Code §§ 2698 *et seq.* (SAC ¶¶ 41–118 (Docket No. 18).)

or more of the defendants at any time between March 12, 2004, through the date on which this Order is signed." (July 7, 2014 Order at 35.) The court appointed Jose Ontiveros as class representative, the law firm of Mallison & Martinez as class counsel, and Simpluris, Inc. as settlement administrator. (*Id.* at 35–36.) The court also approved the notice of settlement and final approval hearing, share and correction form, and opt-out form. The court set the final fairness hearing for October 6, 2014. (*Id.*) It directed class counsel to file with the court, within twenty-eight days of the fairness hearing, a petition for an award of attorney's fees and costs; all papers in support of the settlement, incentive award, fees, and costs; and a declaration from the settlement administrator setting forth the services rendered, proof of mailing, a list of all class members who have commented upon or objected to the settlement, and copies of any correction or opt-out forms.

After conducting the final fairness hearing and carefully considering the terms of the settlement, the court now addresses whether this collective and class action should receive final certification; whether the proposed settlement is fair, reasonable, and adequate; and whether class counsel's request for attorneys' fees and costs, as well as an enhancement award for the representative plaintiff, should be granted.

## II. *Discussion*

■ Judicial policy strongly favors settlement of class actions. *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir.1992). "To vindicate the settlement of such serious claims, however, judges have the responsibility of ensuring fairness to all members of the class presented for certification." *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir.2003). Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both [1] the propriety of the certification and [2] the fairness of the settlement." *Id.*

■ The approval of a class action settlement takes place in two stages. In the first stage of the approval process, as it did here, the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class. *See Murillo v. Pac. Gas & Elec. Co.,* 266 F.R.D. 468, 473 (E.D.Cal. 2010). At the fairness hearing, presently before the court, after notice is given to putative class members, the court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement. *See Diaz v. Trust Territory of Pac. Islands,* 876 F.2d 1401, 1408 (9th Cir.1989) (holding that a court is required to hold a hearing prior to final approval of a dismissal or compromise of class claims to "inquire into the terms and circumstances of any dismissal or compromise to ensure it is not collusive or prejudicial"). Following such a hearing, the court must reach a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon. *See Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525 (C.D.Cal.2004).

### A. *Use of An Opt–Out Class*

For reasons discussed in the Order granting preliminary approval, the court permitted plaintiff to seek certification of an opt-out class. (July 7, 2014 Order at 10.) Because nothing has come to the court's attention that would change its earlier reasoning, the court permits the same here.

### B. *Final Certification of the Class*

For certification, a putative class "must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. Moreover, the proposed class must satisfy the requirements of Rule 23(b), which defines three different types of classes." *Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 512 (9th Cir.2013) (citations omitted). These requirements "demand undiluted, even heightened attention in the settlement context ... for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods. Inc. v.*

*Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

### 1. *Rule 23(a)*

Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These requirements are more commonly known as numerosity, commonality, typicality, and adequacy of representation, respectively. *Leyva,* 716 F.3d at 512. While the court must evaluate Rule 23(a)'s requirements independently, they serve a common purpose of "ensur[ing] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal–Mart Stores, Inc. v. Dukes,* — U.S. ——, ——, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011).

In the court's Order granting preliminary approval of the settlement, the court found that the putative class satisfied the numerosity, commonality, and typicality requirements of 23(a). However, the court expressed concern that the proposed incentive to the class representative, which is unusually high, might create a conflict. Additionally, the parties' preliminary approval papers, upon which the court relied in making its initial determination, inadvertently discussed 197 class members instead of 300. (Mem. in Support of Mot. for Final Approval at 1 n. 1. (Docket No. 144).) The court is unaware of any changes that would alter its analysis as to typicality and commonality, and because the parties did not indicate at the fairness hearing that they were aware of any such developments, the court finds these requirements have been met. The court will thus evaluate numerosity and adequacy of representation for purposes of final certification.

#### a. *Numerosity*

■ In its preliminary order, the court found the proposed class easily satisfied the numerosity requirement. (July 7, 2014 Order at 12.) However, the parties' preliminary approval papers inadvertently discussed 197 class members, and parties now assert there are approximately 300 class members. (Mem. in Support of Mot. for Final Approval at 1 n. 1.) Because the number of proposed class members is actually greater than that upon which the court granted its preliminary approval of the settlement, the court still finds the class satisfies the numerosity requirement of 23(a). *See Collins v. Cargill Meat Solutions Corp.,* 274 F.R.D. 294, 300 (E.D.Cal.2011) (conditionally certifying a class of 219 employees); *Lymburner v. U.S. Fin. Funds, Inc.,* 263 F.R.D. 534, 539 (N.D.Cal.2010) (certifying a class of 121 plaintiffs).

#### b. *Adequacy of Representation*

■ Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R.Civ.P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998). These inquiries require the court to consider a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins. Co.,* 982 F.2d 386, 390 (9th Cir.1992). In its Order granting preliminary approval, the court determined that the named plaintiff and his counsel pursued the class's claims with vigor. (July 7, 2014 Order at 21.) However, the court was concerned that the proposed incentive award of $20,000 to the class representative might create a conflict of interest between the representative and absentees. (*Id.* at 17–20.)

■ Incentive awards "are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and,

sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir.2009). The use of an incentive award nonetheless raises the possibility that the named plaintiff's interest in receiving that award will cause his interests to diverge from the class's interest in a fair settlement. *Staton*, 327 F.3d at 977–78 (expressing concern that plaintiffs receiving a special incentive might be "more concerned with maximizing [their own] incentives than with judging the adequacy of the settlement as it applies to class members at large").

▉▉▉▉▉ Courts must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir.2013). "To assess whether an incentive payment is excessive, district courts balance 'the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Hopson v. Hanesbrands, Inc.*, Civ. No. 3:08–844 EDL, 2009 WL 928133, at *10 (N.D.Cal. Apr. 3, 2009) (quoting *Staton*, 327 F.3d at 977). Additionally, the court should consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (9th Cir.2003) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.1998)).

▉▉▉ The parties propose an incentive payment of $20,000 to the named plaintiff, Mr. Ontiveros, (*see* Mallison Decl. ¶ 310), which comprises 1% of the common fund. In the event the court grants a lesser amount, the remainder of those funds will be redistributed to other class members. (Settlement Agreement III(c).) A this final stage, parties continued to assert that Mr. Ontive-

ros's efforts warrant the $20,000 award, they also suggest the incentive award could be reduced to $15,000 if needed. (Mem. in Support of Mot. for Final Approval at 27:13–23.)

A $20,000 incentive award consisting of one percent of the common fund is unusually high, and some courts have been reluctant to approve incentive awards constituting such a great portion of the common fund. *See, e.g., Clayton v. Knight Transp.*, Civ. No. 1:11–00735 SAB, 2013 WL 5877213, at *12 (E.D.Cal. Oct. 30, 2013) (finding in its order granting preliminary approval that a downward adjustment of the plaintiff's incentive award from $7,500 to $3,500 was warranted given the large disproportion of the award to the recovery of the unnamed class members);[2] *Ko v. Natura Pet Prods., Inc.*, Civ. No. 09–2619 SBA, 2012 WL 3945541, at *15 (N.D.Cal. Sept. 10, 2012) (holding that an incentive award of $20,000, comprising one percent of the approximately $2 million common fund was "excessive under the circumstances" and reducing the award to $5,000); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, Civ. No. 5:08–482 VAP OP, 2010 WL 2486346, at *10 (C.D.Cal. June 15, 2010) (citing cases).

Other courts, however, have found awards comprising a significantly high portion of the common fund to be reasonable. *See, e.g., Bond v. Ferguson Enters., Inc.*, Civ. No. 1:09–1662 OWW MJS, 2011 WL 2648879, at *2, 15 (E.D.Cal. June 30, 2011) (approving an $11,250 incentive payment to each of the two named plaintiffs despite a $2,250,000 gross settlement); *Alvarado v. Nederend*, Civ. No. 1:088–1099 OWW DLB, 2011 WL 90228, at *5 (E.D.Cal. Jan. 11, 2011) (finding a $7,500 incentive award to each of the five representatives to be reasonable even where the gross settlement amounted to $505,058.60); *Ross v. U.S. Bank Nat'l Ass'n*, Civ. No. 3:07–2951 SI, 2010 WL 3833922, at *3 (N.D.Cal. Sept. 29, 2010) (approving an award of $20,000 to each of four named plaintiffs where settlement fund was $1,050,000.00, based on their

---

2. The $7,500 award constituted 2.5% of the common fund of $300,000, which had a 40% floor of net distribution to class members. *See Clayton*, 2013 WL 5877213, at *2. In its order granting final approval, the *Clayton* court found there was no reason to reconsider reducing the award and

ordered a downward departure pursuant to its reasoning at the preliminary stage. *See Clayton v. Knight Transp.*, Civ. No. 1:11–00735 SAB, 2014 WL 1154098, at *6 (E.D.Cal. Mar. 21, 2014).

contributions to litigation and the risk that being a class representative would harm their reputation).

The named plaintiff appears to have been significantly involved in this litigation. (Mem. in Support of Mot. for Final Approval at 27:13.) He estimates he spent 271 hours on his duties as class representative over a period of six years. (*See* Ontiveros Decl. ¶ 4.) Of that total, he spent the greatest portion of time consulting with class counsel (seventy hours); reviewing discovery produced by defendants (sixty hours); communicating with workers about the case (fifty hours); and reviewing records and assisting counsel during the initial investigation (thirty hours). (*See id.*) These are exactly the sort of tasks for which an incentive award is appropriate. *See Staton,* 327 F.3d at 977; *Rodriguez,* 563 F.3d at 958–59.

The court disagrees, however, with the parties' appraisal of a fair rate at which to compensate the named plaintiff. An incentive award of $20,000 compensates Mr. Ontiveros at a rate of $73.80 per hour. Incentive awards should be sufficient to compensate class representatives to make up for financial risk, *see Rodriguez,* 563 F.3d at 958–59,—for example, for time they could have spent at their jobs.[3] Overcompensating named plaintiffs at the expense of a reduction in the common fund available to class remembers could encourage collusion at the settlement stage of class actions where a named plaintiff's interest naturally diverges from that of the class, compromising his role as a judge of adequacy. *See Staton,* 327 F.3d at 977–78. The court finds that a downward departure from the award proposed by parties from $73.80 per hour to $50 per hour fairly compensates the named plaintiff for his time and incorporates an extra incentive to participate in litigation. Multiplying that rate by the 271 hours the named plaintiff spent on litigation, the court finds

he would be entitled to an award of $13,550.

At oral argument, class counsel indicated that by proceeding on his wage and hour claims as class representative, Mr. Ontiveros relinquished the opportunity to bring several of his own claims relating to alleged uncompensated meal periods. While it is unclear whether those claims would have had merit, the court takes this sacrifice into account when scrutinizing an incentive award, *see Rodriguez,* 563 F.3d at 958–59. This court will thus elevate the it award it calculated based on an hourly rate to $15,000, accounting for the claims Mr. Ontiveros was not able to bring because he committed to proceeding as the named plaintiff.

In light of plaintiff's significant efforts, an award of $15,000 does not appear grossly disproportionate to the estimated average recovery of other individual class members of approximately $3,700,[4] especially given that the highest pro rata settlement share is $14,358.92. (*See* Salinas Decl. ¶ 14 (Docket No. 139).)[5] The court is satisfied that parties provided ample evidence of plaintiff's substantial efforts taken as class representative. Accordingly, taking into account the reduced incentive, the court finds plaintiff's interests are aligned with the class. Because the Order granting preliminary approval also found the second step of the adequacy analysis satisfied, (July 7, 2014 Order at 21–22), and nothing has come to the court's attention that would change its analysis, the court determines that plaintiff is an adequate class representative.

### 2. Rule 23(b)

An action that meets all the prerequisites of Rule 23(a) may only be certified as a class action if it also satisfies the requirements of one of the three subdivisions of Rule 23(b). *Leyva,* 716 F.3d at 512. Plaintiff seeks certification under Rule 23(b)(3), which provides

---

3. Mr. Ontiveros indicated that in 2007, his hourly flat rate at Zamora was $15 per hour.

4. The court notes that the per-member recovery will actually be greater, due to the court's reduction of the incentive and attorneys' fees awards.

5. In their Memorandum in support of their motion for preliminary approval, the parties stated the average settlement would be approximately $6,000 per class member. This figure was based on a 200–person class. Now, parties state the class has approximately 300 members, and therefore the average payout has decreased.

that a class action may be maintained only if (1) "the court finds that questions of law or fact common to class members predominate over questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

In its Order granting preliminary approval of the settlement, the court found that both prerequisites of Rule 23(b)(3) were satisfied. (July 7, 2014 Order at 21–24.) The court is unaware of any changes that would affect this conclusion, and the parties indicated at the fairness hearing that they were unaware of any such developments. There were no objections by individual class members who claimed to have an interest in controlling the prosecution of this action or related actions.[6] Because the settlement class satisfies Rule 23(a) and 23(b)(3), the court will grant final class certification.

### 3. *Rule 23(c)(2) Notice Requirements*

■ If the court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. 23(c)(2)(B). Rule 23(c)(2) governs both the form and content of a proposed notice. *See Ravens v. Iftikar,* 174 F.R.D. 651, 658 (N.D.Cal.1997) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 172–77, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). Although that notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required. *Silber v. Mabon,* 18 F.3d 1449, 1454 (9th Cir.1994) (citation omitted).

■ As provided by the Settlement Agreement, the settlement administrator, Simpluris, mailed notice of the settlement to the last known address of all class members. (Salinas Decl. ¶ 8.) Simpluris used its best efforts to locate updated addresses for class members by updating the class list in accordance with the National Change of Address

Database. (*See id.* ¶ 7.) If a class member's notice packet was returned as undeliverable without a forwarding address, Simpluris performed an advanced search on those addresses. (*Id.* ¶ 9.) Ultimately, only four notices of 307 were undeliverable because Simpluris was unable to find a correct address. (*Id.* ¶ 10.) The court is satisfied that this system of providing notice was reasonably calculated to provide notice to class members and was the best form of notice available under the circumstances. *See Monterrubio v. Best Buy Stores, L.P.,* 291 F.R.D. 443 (E.D.Cal.2013) (approving settlement in which Simpluris provided notice by mail to potential class members).

Likewise, the notice itself clearly identified the options available to putative class members—do nothing, object, or opt out—and comprehensively explained the nature and mechanics of the settlement in a separate document. (*See* Mallison Decl. Ex. A.) The content of the notice is therefore sufficient to satisfy Rule 23(c)(2)(B). *See Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir.2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (quoting *Mendoza v. Tucson Sch. Dist. No. 1,* 623 F.2d 1338, 1352 (9th Cir.1980))).

### C. *Rule 23(e): Fairness, Adequacy, and Reasonableness of Proposed Settlement*

■ Having determined that class treatment appears to be warranted, the court must now address whether the terms of the parties' settlement appear fair, adequate, and reasonable. In conducting this analysis, the court must balance several factors including

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the

---

**6.** Class members who wished to object were directed to file their objection with the Court and serve a copy of their objection on the parties' attorneys. The claims administrator indicated

that as of September 8, 2014, it had not received any objections. There were no objections voiced at the hearing.

stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon,* 150 F.3d at 1026. *But see In re Bluetooth Headset Prods. Liab. Lit.,* 654 F.3d 935, 946 (9th Cir.2011) ("The factors in a court's fairness assessment will naturally vary from case to case."); *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (noting that a district court may consider "some or all" of these factors) (quoting *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993)) (internal quotation marks omitted).

1. *Terms of the Settlement Agreement*

The key terms of the Settlement Agreement are as follows:

(1) **Settlement Class:** All nonexempt automotive technicians employed by one or more defendants at any time between March 12, 2004, and the date of preliminary approval. (Settlement Agreement § I, ¶ C.) As of September 8, 2014, there were 307 participating class members. (Salinas Decl. ¶ 14.)

(2) **Notice:** Pursuant to the Agreement, the settlement administrator, Simpluris, sent a packet containing a class notice, share and correction form, and opt-out form to all class members after verifying the class list with the National Change of Address Database. (*Id.* ¶ 5–7.) For the reasons previously discussed, the court found that notice under the agreement complied with Rule 23(c)(2). *See supra* Part B.3.

(3) **Opt–Out Procedure:** To opt out of the settlement, a class member was required to submit and sign an opt-out form and mail that form to the settlement administrator no later than forty-five days after the administrator mailed the class notice packet. A class member who did not do so automatically became part of the settlement class and will be bound by all terms and conditions of the Settlement Agreement, including release of claims. (Settlement Agreement § III, ¶ G.4.b.) Simpluris received no requests for

exclusion from the Settlement. (Salinas Decl. ¶ 13.)

(4) **Objections to Settlement:** Any individual class member could object to or comment on the settlement so long as he or she filed and served a copy of the comment or objection no later than sixty days after the court granted preliminary approval. Any objection not filed by that deadline was deemed waived. (Settlement Agreement § III, ¶ G.4.a.) At the fairness hearing, no objections were voiced.

(5) **Settlement Amount:** Defendants have agreed to pay a gross settlement amount of $2,000,000. (*Id.* § III, ¶¶ B–C.) That amount shall be used to satisfy the claims of all participating settlement members, class counsel's litigation expenses, any award of attorney's fees to class counsel, an incentive award to plaintiff, a payment to the state of California in satisfaction of plaintiff's Private Attorney General Act claim, payroll taxes on the portion of the settlement fund designated as wages, and claims administration expenses. (*Id.*) The settlement administrator calculates that after all other payments are deducted, the net settlement amount available to pay participating class members is $1,135,118.47. (Salinas Decl. ¶ 14.)[7]

(6) **Attorney's Fees and Incentive Award:** Plaintiff and class counsel request a fee award of 33.3% of the settlement fund, expenses and costs of $50,000, and an incentive award for the named plaintiff of $20,000. Defendants agreed not to oppose these requests. (Settlement Agreement § III, ¶ C.)

(7) **Settlement Distribution:** Settlement funds will be distributed on an individualized basis using a formula created by the parties. That formula will pay each class member a share of the settlement fund equivalent to the number of weeks that individual worked during the class period divided by the number of weeks worked by all class members over that period. One third of each class member's recovery is intended to settle claims for lost wages, and that portion of the recovery shall be subject to tax withholding.

---

7. Because this Order makes downward adjustments to the attorney's fees award and incentive payment, the actual net settlement will be higher than that calculated by the settlement administrator.

Class members shall be paid by check. After sixty days, any un-cashed checks will be cancelled and the remaining sum available will be distributed to those class members who did cash their checks. In the event that any class members fail to cash checks issued in the second round, those funds will be distributed to designated *cy pres* beneficiaries. (*Id.* § III, ¶ E.)

(8) **Release:** Class members agree to release "any and all claims, debts, liabilities, guarantees, costs, expenses, attorney's fees, damages, actions, or causes of action set forth in the Second Amended Complaint." (*Id.* § III, ¶ H.) The release excludes "all other claims, including but not limited to retaliation, discrimination, unemployment, disability, and workers' compensation." (*Id.*) In addition, plaintiff agrees to execute a general release of all claims against defendants and to waive any rights he may retain against defendants under section 1542 of the California Civil Code. Defendants agree to execute a corresponding general release of any claims against plaintiff and to dismiss their pending appeal to the Ninth Circuit. (*Id.*)

## 2. *Rule 23(e) Factors*

### a. *Strength of Plaintiff's Case*

An important consideration is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement. *DIRECTV*, 221 F.R.D. at 526. The district court, however, is not required to reach any ultimate conclusions on the merits of the dispute, "for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements." *Officers for Justice v. Civ. Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

Plaintiff's claims that defendants' piece-rate compensation practice was unlawful survived defendants Stockton Motor Cars and Zamora's motion for judgment on the pleadings. (*See* Feb. 20, 2009 Order (Docket No. 29).) In the order denying defendants' motion in part, the judge previously assigned to this case found that both plaintiff and defendants agree that the corporate defen-

dants used a pure piece-rate system to compensate employees. (*Id.* at 5.) Defendants argued the system was lawful, but the court rejected that argument. (*See id.* at 6 ("It appears that plaintiff has alleged a valid theory of recovery on this issue such that judgment on the pleadings is not appropriate.")) With respect to its claim based on defendants' piece-rate system, at least, plaintiff appears to have a strong case.

Plaintiff also filed declarations in support of his motion for class certification revealing that defendants' compensation policies did not provide payment to employees for time not spent on piece-rate work. (Pl.'s Mem. in Support of Class Certification at 4:23–5:5 (Docket No. 47).) That fact, if true, would strengthen plaintiff's case. Additionally, plaintiffs, having reviewed employee time cards through discovery, stated it was possible to use those cards as a basis for determining precisely the amount of unpaid time for each employee on every day during the class period. (*Id.* at 7:4–6.) Because the action was stayed pending the outcome of the Ninth Circuit appeal, defendants never filed an opposition to the motion for class certification and thus had no opportunity to dispute those facts.

On balance, the record suggests plaintiff presented a strong case, although the facts remain undeveloped at this early stage of the litigation. The court will consider the relative strength of plaintiff's case together with risks weighing against it.

### b. *Risk, Expense, Complexity, and Likely Duration of Further Litigation*

The named plaintiff signed an employment agreement containing an arbitration provision. (*See* Joy Decl. Ex. A (Docket No. 72–2).) On that basis, defendants moved to compel arbitration, (Docket No. 72), but the previous judge assigned to this case denied the motion, (Docket No. 104). At the time the parties moved for the court's preliminary approval of their settlement, (*see* Docket No. 12), defendants' appeal concerning the enforceability of an arbitration clause in the plaintiff's employment agreement was pending before the Ninth Circuit. (Mallison Decl. ¶ 40.) Before the Ninth Circuit heard

the matter, the parties reached settlement and stipulated to a voluntary dismissal of the appeal. (Docket No. 124.)

Class counsel state that if defendants had prevailed on appeal, there would not likely have been any method by which plaintiffs could litigate this case on a class basis. (Mem. in Support of Mot. for Final Approval at 12:23–25.) The Order denying defendants' motion to compel arbitration noted that while the agreement signed by plaintiff did not include an express class arbitration waiver, it was possible that the provision's language implicitly waived the right to proceed as a class. (Feb. 14, 2013 Order at 5 n. 2 (Docket No. 104) (citing *Kinecta Alt. Fin. Solutions, Inc. v. Superior Court*, 205 Cal.App.4th 506, 518–19, 140 Cal.Rptr.3d 347 (2d Dist.2012)); *Reyes v. Liberman Broad., Inc.*, 208 Cal. App.4th 1537, 146 Cal.Rptr.3d 616 (2d Dist. 2012), *review granted and opinion superseded by Reyes v. Liberman Broad.*, 149 Cal. Rptr.3d 675, 288 P.3d 1287 (2012), *review dismissed and remanded in light of Iskanian v. CLS Transp. of Los Angeles*, 59 Cal.4th 348, 173 Cal.Rptr.3d 289, 327 P.3d 129 (2014), 176 Cal.Rptr.3d 265, 331 P.3d 1273 (2014).)

Having determined the parties intended the California Arbitration Act's ("CAA") procedural rules to govern the agreement, the court interpreted the arbitration agreement under the Federal Arbitration Act ("FAA") but applied the CAA where the two statutes conflicted. (Feb. 14, 2013 Order at 10:17–24.) The court found defendants did not act diligently to exercise their right to arbitrate the dispute, (*id.* at 19:19–20 (citing *St. Agnes Med. Ctr. v. PacifiCare of Cal.*, 31 Cal.4th 1187, 1196, 8 Cal.Rptr.3d 517, 82 P.3d 727 (2003))), acted inconsistently with the right to arbitrate by evincing an intent to litigate, (Feb. 14, 2013 Order at 20:10–18), and engaged in bad faith conduct, prejudicing plaintiff, (*id.* at 25:2–4).

It is impossible for the court to predict with certainty whether defendants would have prevailed on appeal, but it is not re-

quired to do so, *see Officers for Justice* 688 F.2d at 625. The court concludes defendants' appeal introduced risk to the litigation because an opinion from the Ninth Circuit in defendants' favor could have impaired plaintiffs' ability to proceed as a class. This risk weighs in favor of finding the settlement fair, adequate, and reasonable.

#### c. *Risk of Maintaining Class Action Status Throughout Trial*

The court is unaware of any foreseeable difficulty the class might have in maintaining class-action certification at trial.[8] Accordingly, the court will not consider this factor in assessing the settlement. *See Linney*, 151 F.3d at 1242.

#### d. *Amount Offered in Settlement*

▮▮▮▮ "In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *DIRECTV*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *DIRECTV*, 221 F.R.D. at 527 (citing cases).

The gross settlement will cover the employer payroll taxes on the settlement shares; a $40,000 payment to the California Labor and Workforce Development Agency for civil penalties; the incentive payment to the named plaintiff; settlement administration costs of $9,700; payment of the $666,667 in fees class counsel is requesting; and $50,000 in costs. (Salinas Decl. ¶ 14.) The settlement administrator estimates the net settlement, or the amount paid to participating class members, is $1,135,118.47. (*Id.*) As of the time of the fairness hearing, 307 members have opted into the class, and the estimated average settlement share for a class member is approximately $3,680.19. (Salinas Decl. ¶ 14.)[9]

---

8. Parties state "there is no guarantee of continued class certification relating to a myriad legal and factual issues in this case" but give no concrete basis for doubting that class members would be able to maintain certification.

9. The net settlement amount and average share will increase due to the court's reduction of the plaintiff's incentive award and attorneys' fees.

According to class counsel, the primary claim in this case involved approximately 3 to 4 million dollars in wage liability. (Mallison Decl. ¶ 44.) The court finds no reason to doubt class counsel's assertion that a $3,680.19 average payout is a good result in a wage and hour case involving blue collar workers. (Mem. in Support of Mot. for Final Approval 12:27–28.) Additionally, class counsel's proposed formula for apportioning the settlement to class members appears to be well-researched. (*See* Mallison Decl. ¶ 34.) Although the court is ill equipped to conclude how the $3,680.19 average payout compares to actual damages recoverable at trial, the overall terms of the settlement appear fair, *see DIRECTV*, 221 F.R.D. at 527.

### e. Extent of Discovery and the State of the Proceedings

A settlement that occurs in an advanced stage of the proceedings indicates the parties carefully investigated the claims before reaching a resolution. *Alberto v. GMRI, Inc.*, Civ. No. 07–1895 WBS DAD, 2008 WL 4891201, at *9 (E.D.Cal. Nov. 12, 2008).

After filing the SAC, class counsel conducted discovery and non-discovery investigation regarding class certification and the merits of their claims. (Mem. in Support of Mot. for Final Approval at 3:25–26.) Counsel scanned 142,700 pages of payroll and time-keeping documents, which involved four months of photocopying, printing, and organizing. (*Id.* at 3:27–4:4.) Plaintiffs believed these materials provided them a basis for determining precisely the amount of unpaid time for each employee on every day during the class period. (Pl.'s Mem. in Support of Class Certification at 7:4–6.)

Additionally, the parties engaged in four full days of mediation and incorporated their mediator's proposals in their settlement agreement. (*See id.* at 15:14–15.) The parties use of mediation, which took place after significant discovery, and their reliance on the mediator's proposal in settling demonstrates the parties considered a neutral opinion in evaluating the strength of their arguments. *See Murillo v. Pac. Gas & Elec. Co.*, Civ. No. 2:08–1974 WBS GGH, 2010 WL 2889728 (July 21, 2010). Accordingly, the parties' apparent careful investigation of the claims and their resolution in consideration of the views of a third party mediator weigh in favor of settlement.

### f. Experience and Views of Counsel

Class counsel indicate that they have extensive experience litigating wage-and-hour class actions; since starting their firm in 2005, they have litigated over sixty wage-and-hour class actions and have brokered seven-figure settlements in at least five of those cases. (Mallison Decl. ¶ 6.) Counsel believes the settlement provides for substantial recovery in light of numerous factors, including the risks of significant delay, defendants' defenses, and the merits of the (now-dismissed) Ninth Circuit appeal. (*Id.* at ¶¶ 39–40.) The court gives considerable weight to class counsel's opinions regarding the settlement due to counsel's experience and familiarity with the litigation. Counsel's assertion that the settlement is fair, adequate and reasonable is a factor supporting the court's final approval of the agreement. *See Hanlon*, 150 F.3d at 1026.

### g. Presence of a Government Participant

No government entity participated in this case. However, plaintiff brought claims under the California Private Attorney General Act of 2004, Cal. Labor Code § 2698 *et seq.*, ("PAGA"). Because plaintiff will share civil penalties of $40,000 with the State of California, this factor weighs in favor of approval of the settlement. *See Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 977 (E.D.Cal.2012) (Karlton, J.) (weighing civil penalties paid pursuant to PAGA in favor of settlement approval).

### h. Reaction of the Class Members to the Proposed Settlement

The settlement administrator identified 307 participating class members and reported only four notices that were undeliverable because it was unable to find a correct address. (Salinas Decl. ¶ 9.) As of this date, the court is unaware of any class member who has filed an objection to the settlement. "It is established that the absence of a large number of objections to a proposed class action settlement raises a

strong presumption that the terms of a proposed class settlement action are favorable to the class members." *DIRECTV*, 221 F.R.D. at 529. Accordingly, this factor weighs in favor of the court's approval of the settlement.

Having considered the foregoing factors, the court finds the settlement is fair, adequate, and reasonable pursuant to Rule 23(e). *See Hanlon*, 150 F.3d at 1026

### D. *Attorney's Fees*

■ If a negotiated class action settlement includes an award of attorney's fees, that fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir.2002); *Monterrubio*, 291 F.R.D. at 455. The court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir.2011).

■ The Ninth Circuit has approved two methods of assigning attorney's fees in common fund cases: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir.2002) (citing *In re Wash. Pub. Power Supply Sys. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir.1994)). The district court has discretion in common fund cases to choose either method. *Vizcaino*, 290 F.3d at 1047.

■ Under the percentage method, the court may award class counsel a percentage of the common fund recovered for the class. *Id.* The percentage method is particularly appropriate in common fund cases, where "the benefit to the class is easily quantified." *Bluetooth*, 654 F.3d at 942. The Ninth Circuit has approved a "benchmark" percentage of 25%, and courts may adjust this figure upwards or downwards if the record shows " 'special circumstances' justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990)). In deciding whether to depart from the 25% benchmark, a district court may take into account "the

result achieved, the risk involved in the litigation, the skill required and quality of work by counsel, the contingent nature of the fee, awards made in similar cases, and the lodestar crosscheck." *Nwabueze v. AT & T, Inc.*, Civ. No. 3:09–1529 SI, 2013 WL 6199596, at *10 (N.D.Cal. Nov. 27, 2013). The Ninth Circuit has permitted courts to award attorney's fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *Bluetooth*, 654 F.3d at 942.

The court will adopt the "common fund" model and incorporate a lodestar crosscheck. In its order granting preliminary approval, the court expressed reservation regarding class counsel's request for a percentage award of 33.3%. While some courts have approved percentage awards that high, awards of that size are generally disfavored unless they are corroborated by the lodestar or reflect exceptional circumstances. *See, e.g., Adoma*, 913 F.Supp.2d at 982–83 (rejecting class counsel's argument that a 33.3% award was appropriate and distinguishing cases); *Monterrubio*, 291 F.R.D. at 457–58 (same). The court preliminarily approved the award on the understanding that class counsel should be prepared to demonstrate on or before the fairness hearing that the 33.3% award is reasonable in light of the hours expended and the circumstances of the case. (July 7, 2014 Order at 34.)

#### 1. *Reasonableness of the Percentage*

■ Class counsel argues that the requested fee of 33.3%, or $666,667 is reasonable in light of several factors. First, class counsel points out that they achieved excellent results. (Mem. in Support of Final Approval at 21:25.) Counsel compares the $2 million settlement to the $3–4 million estimated value of the class members' primary claim. (*Id.* at 21:26–22:5.) Class counsel asserts that undertaking this case was risky because the underlying legal theories had never before been tested, (*id.* at 22:6–10), and by prevailing on those theories, they advanced important developments in California wage-and-hour law, (*id.* at 22:6–23:18). Counsel also claim they "doggedly pursued" this matter, expending great effort on behalf

of the class in reviewing thousands of pages of timekeeping and payroll documents. (*Id.* at 23:20–24:4.) Lastly, counsel state they expended significant time and resources with no guarantee plaintiffs would ever obtain recovery. (*Id.* at 24:6–14.) [10]

The court hesitates to characterize some of these circumstances as special so as to justify a departure from the 25% benchmark. While the court notes class counsel's diligence during discovery, their experience and reputation, their successes in opposing a motion for judgment on the pleadings and a motion to compel arbitration, (*see* Docket Nos. 29, 104), the size of the gross settlement, and their outlay of time and resources with no guarantee of recovery, counsel has not demonstrated how these factors constitute "special circumstances" that are not typically present in other common fund cases.

The novelty of class counsel's legal arguments may constitute "special circumstances" justifying a departure from the benchmark. Counsel states his firm "undertook this wage and hour class action at a time in which the underlying theories of liability had never been tested." (Mem. in Support of Final Approval at 22:6–10.) Citing cases, counsel indicates the firm's novel piece-rate theory, which alleged defendant Zamora's wage formula failed to compensate plaintiff for rest breaks and essential tasks, impacted California labor law. (*See id.* at 22:11–23:18.) The court finds counsel's novel theory may constitute a "special circumstance." *See Teitelbaum v. Sorenson*, 648 F.2d 1248, 1250 (9th Cir.1981) ("Actions based on novel legal theories generally require greater attorney effort than actions based on familiar legal theories.") Nevertheless, because the departure from the benchmark class counsel seeks is significant, the court, in accordance with its Order granting preliminary approval, will cross-check the requested fees against the lodestar.

### 2. *Lodestar Cross–Check*

■ Calculation of the lodestar can provide a useful perspective on the reasonableness of a given percentage award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir.2002). Under the lodestar method, the court determines an appropriate attorney's fee by multiplying the number of hours class counsel reasonably expended by a reasonable hourly rate. *Id.* at 941. The court may then adjust the lodestar upwards or downwards based on a "host of 'reasonableness' factors." *Id.* at 942 (citing *Hanlon*, 150 F.3d at 1029). While the lodestar method is most often applied in class actions brought under fee-shifting statutes or those where the relief obtained is not easily monetized, it may be used in common fund cases as well. *Id.* at 941–42.

#### a. *Reasonable Rate*

■ Class counsel submitted a summary of their lodestar fees to date, which totaled $487,947. (Mallison Decl. ¶ 47.) The total accounts for the hours of Stan Mallison and Hector Martinez, who both ask for an hourly rate of $650; Marco Palau, asking for a rate of $495; Joseph Sutton, asking for a rate of $425; and Eric Trabucco, asking for a rate of $325.

■ A reasonable rate is typically based upon the prevailing market rate in the community for "similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir.1986). The relevant community is generally the forum in which the court sits. *Barjon v. Dal-*

---

10. Class counsel states the firm has "routinely received fee awards in excess of the [25%] benchmark." (Mem. in Support of Final Approval at 20:15.) However, in three of four of these cases, the 33.3% class counsel was seeking was *less than* the asserted lodestar. *See Alvarado et al. v. Rex Nederend*, Civ. No. 1:08–1099 OWW DLB, 2011 WL 1883188, at *8 (E.D.Cal. May 17, 2011) (noting a 33.3% portion of settlement was "significantly less" than class counsel's asserted lodestar); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D.Cal.2010) (Wanger, J.) (noting 33.3% portion was "significantly less" than the asserted lodestar); (Mem. in Support of Final Approval at 18:26, *Chavez et al. v. Petrissans et al.*, Civ. No. 1:08–122 LJO GSA (E.D.Cal. 2009) (noting 33.3% amounted to 65% of the lodestar)). In the fourth case, counsel noted the 33.3% portion or $133,333 "roughly correspond[ed]" to the asserted lodestar of $120,212.50. (Mem. in Support of Final Approval at 18:16–17, *Benitez v. Wilbur*, Civ. No. 1:08–1122 LJO GSA, 2009 WL 498085 (E.D.Cal. 2009).)

*ton,* 132 F.3d 496, 500 (9th Cir.1997). Class counsel asserts "the hourly rates for attorney time are reasonable and consistent with attorneys with comparable experience and qualifications in the bay area," (Mem. in Support of Final Approval at 25:17–20), but here the "relevant community" is the Sacramento division of the Eastern District.[11]

Although the court has no reason to question class counsel's experience and vigor, counsel has not provided the court with any helpful information regarding the prevailing market rates for similar work performed by competent attorneys in the relevant legal community, and the court must look to other sources.[12] The rates requested by Mr. Mallison, Mr. Martinez, and Mr. Palau are high for even the most experienced attorneys in the Eastern District. *See Johnson v. Allied Trailer Supply,* Civ. No. 2:13–1544, 2014 WL 1334006, at *5 (E.D.Cal. Apr. 3, 2014); *Joe Hand Promotions, Inc. v. Albright,* Civ. No. 2:11–2260, 2013 WL 4094403, at *2 (E.D.Cal. Aug. 13, 2013) (citing Eastern District cases in which judges awarded experienced attorneys rates between $275 and $400). The same is true for the rates the associates are seeking. A reasonable rate for associates working in this community is typically between $150 and $175 per hour. *See Joe Hand,* 2013 WL 4094403, at *3.

In the absence from any apposite information provided by class counsel, and for the purposes of conducting a lodestar "cross check," the court will use rates that in the Eastern District of California would be considered among the highest for experienced attorneys as part of its calculations: $400 per hour for Mallison, Martinez, and Palau, and $175 for the other associates. Both rate levels are generous in light of common fee awards in this district. *See Johnson,* 2014

WL 1334006, at *5; *Joe Hand,* 2013 WL 4094403, at *2.

#### b. *Reasonable Hours*

When calculating a lodestar, normally a court may independently scrutinize time sheets to determine whether the hours attorneys are asserting are duplicative or excessive. *See In re Washington Public Power Supply System Securities Litigation,* 19 F.3d 1291, 1298 (9th Cir.1994) (holding the district court acted within the bounds of its discretion in reducing the lodestar for unnecessary and duplicative work). Here, inasmuch as the court will use the lodestar only to "cross-check" the reasonableness of the percentage award, it will accept the total hours provided by counsel.

#### c. *Lodestar Calculation*

The lodestar in this case is thus $323,005.75, calculated as follows:

Mallison: 428.75 × $400/hour = $171,500

Martinez: 64.85 × $400/hour = $25,940

Palau: 246.08 × $400/hour = $98,432

Joseph Sutton: 149.05 × $175/hour = $26,083.75

Eric Trabucco: 6 × $175/hour = $1,050

Even when applying these generous numbers, and taking the "reasonable hours" calculated by counsel at face value, the lodestar is significantly lower than what class counsel is seeking. A lodestar of $323,005.75 comprises approximately 16% of the common fund, which is notably below the Ninth Circuit benchmark. By requesting a 33.3% award of $666,667, counsel is, according to these figures, in essence seeking a multiplier of two.

As discussed, counsel's novel legal theories and their asserted impact on state labor law could constitute grounds for an upward de-

11. There is an exception to the local forum rule. "[R]ates outside the forum may be used 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton,* 132 F.3d 496, 500 (9th Cir. 1997) (quoting *Gates v. Deukmejian,* 987 F.2d 1392, 1405 (9th Cir.1992)). Class counsel has not suggested that local counsel was unavailable.

12. Class counsel makes references to previous fee awards in cases it settled in the Eastern District. (See Mallison Decl. ¶¶ 10, 11.) These instances are not instructive, because the awards did not result from an adversarial procedure. Because of the parties' mutual interest in the court approving the agreed upon settlement, counsel's request for fees in those cases went unopposed by defendants.

parture. However, the court finds that doubling fees in light of this special circumstance would be excessive. The court accordingly resolves to give class counsel the benchmark award of 25% of the common fund. Therefore, the court will approve attorneys' fees of $500,000, taking into account a multiplier of approximately 1.54, which brings the fee award up to the Ninth Circuit benchmark.

### E. Costs

■■■■ "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *23 (C.D.Cal. June 10, 2005) (quoting *In re Gen. Instrument Sec. Litig.*, 209 F.Supp.2d 423, 434 (E.D.Pa.2001)). Class counsel has submitted a list of itemized costs relating to scanning, photocopying, mediation, mileage, court fees, electronic research, depositions, expert fees, and other office-related costs. The court finds these are reasonable litigation expenses, and it therefore will grant class counsel's request for compensation in the amount of $50,000.

### F. Incentive Payment to Named Plaintiff

For the reasons previously discussed, *see supra* Part II.B.1.b, the court orders that an incentive payment of $15,000 be paid to the named plaintiff.

IT IS THEREFORE ORDERED that the parties' joint motion for final approval of the class and collective action settlement be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED THAT:

(1) The court has jurisdiction over this action and the parties' settlement under 28 U.S.C. §§ 1331 and 1367, as plaintiff's original Complaint was brought under the Fair Labor Standards Act 29 U.S.C. §§ 201 *et seq.;* and the court has supplemental jurisdiction over plaintiff's state-law claims;

(2) Solely for the purpose of this settlement, and pursuant to Federal Rule of Civil Procedure 23, the court hereby certifies the following class: all nonexempt automotive technicians who have been employed by one or more of the defendants at any time between March 12, 2004, through July 7, 2014. Specifically, the court finds that:

  a. the settlement class members are so numerous that joinder of all settlement class members would be impracticable;

  b. there are questions of law and fact common to the settlement class which predominate over any individual questions;

  c. claims of the named plaintiff are typical of the claims of the settlement class;

  d. the named plaintiff and class counsel have fairly and adequately represented and protected the interests of the settlement class; and

  e. a class action is superior to other available methods for the fair and efficient adjudicating of the controversy;

(3) the court appoints the named plaintiff, Jose Ontiveros, as representative of the class and finds that he meets the requirements of Rule 23;

(4) the court appoints the following lawyers as counsel to the settlement class, and finds that counsel meets the requirements of Rule 23: Stan S. Mallison and Hector R. Martinez, Law Offices of Mallison & Martinez, 1939 Harrison Street, Suite 730, Oakland, California 94612;

(5) the settlement agreement's plan for class notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. The plan is approved and adopted. The Notice to the class complies with Rule 23(c)(2) and Rule 23(e), and is approved and adopted;

(6) the parties have executed the notice plan in the court's Preliminary Approval Order, in response to which none of the 307 collective class members have opted out or objected. Having found that the parties and their counsel took extensive efforts to locate and inform all putative class members of the settlement, and

given that no class members have filed any objections to the settlement, the court finds and orders that no additional notice to the class is necessary;

(7) all class members who did not opt out from the settlement will receive a settlement share;

(8) class administrator Simpluris, Inc. is awarded $9,700 for their services as settlement administrator;

(9) class representative, Jose Ontiveros, is awarded $15,000 as an incentive payment;

(10) class counsel, Mallison & Martinez, is awarded $500,000 of the gross recovery in attorneys' fees and $50,000 in costs;

(11) the California Labor Code PAGA payment of $40,000 to the State of California is approved;

(12) by means of this Final Approval Order, the court enters final judgment in the action, as defined in Rule Federal Rule of Civil Procedure 58(a)(1);

(13) this action is dismissed with prejudice, each side to bear its own costs and attorneys' fees except as provided by the settlement and this order;

(14) the court retains jurisdiction to consider all further applications arising out of or in connection with the settlement.

LET JUDGMENT BE ENTERED ACCORDINGLY.